**CUMBERLAND VALLEY ANIMAL SHELTER, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 8, 2005.

Decided Aug. 16, 2005.

Brian J. Knite, Harrisburg, for petitioner.

Judith M. Gilroy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Cumberland Valley Animal Shelter (Employer) petitions for review of the January 27, 2005, order of the Unemployment Compensation Board of Review (UCBR), which reversed the decision of a referee denying benefits to Joann E. Henderson (Claimant). We reverse.

Claimant began working at Employer's thrift store in 1997, and she was promoted to the position of manager in 2000. Claimant's compensation included an annual base salary of $30,000 and a monthly bonus based upon the store's profits. (Record item no. 8, exhibit C–1.) In August 2003, Employer decided to suspend bonus payments for the remainder of the fiscal year, and Employer informed Claimant of this change on August 27, 2003. (Record item no. 8, N.T. at 8.) On or about November 2, 2003, Claimant tendered a letter of resignation to Employer, which stated as follows: "After serving out a two week notice I will no longer manage the Chambersburg thrift store. If you wish me to stay till [sic] the end of November I could do so. Thank you!" (Record item no. 3.) Claimant's last day of work was November 30, 2003.

In May 2004, Claimant applied for unemployment benefits. In a telephone statement to the local job center, Claimant explained that she voluntarily quit her employment due to the suspension of bonus payments, which, in her estimate, represented an annual loss of $18,000. During this conversation, Claimant acknowledged that she did not discuss the situation with Employer or make attempts to resolve the problem. Claimant indicated that the situation had occurred several times in the past, and she had fought successfully to get her commission payments restored, but that she did not want to fight any more. (Record item no. 2.)

The local job center concluded that Claimant was ineligible for benefits under section 402(b) of the Unemployment Compensation Law (Law).[1] Claimant appealed, and a referee held a hearing at which both parties appeared *pro se.*

Claimant testified that she left her employment because Employer was taking away her bonuses, but Claimant stated that she did not tell anyone that she would have to quit prior to giving written notice. Claimant believed that the bonus payments would amount to $18,000 to $19,000 per year and that they were guaranteed by a contract.[2] Claimant further testified that Employer had taken away and then reinstated her bonus payments three times in the past. Claimant also complained that, for a time, she had managed two stores at once and had not received the double pay and double bonus that she had been promised. (N.T. at 4–8.)

Nancy E. Gardner, president of Employer's board of directors, testified that Employer told all three employees who were receiving bonuses in 2003 that the bonuses would be discontinued for the remainder of the fiscal year. She stated that no one, including Claimant, indicated that they

---

1. Act of December 5, 1936, Sec. Ex.Sess. P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b), which provides that a claimant is ineligible for compensation if her unemployment is due to her voluntarily leaving employment without cause of a necessitous and compelling nature.

2. The document that Claimant describes as a contract is titled "Chambersburg Thrift Store Procedures"; it states that the store manager is an "at-will" employee, sets forth the manager's base salary and method of computing bonuses and states that the calculations and procedures may be amended or modified by the board of directors at any time. (Record item 8, exhibit C–1.)

were thinking of resigning.[3] Gardner described Claimant's resignation as very cordial. She stated that she visited Claimant as soon as she received Claimant's resignation and asked if any issue needed to be addressed. Gardner testified that Claimant indicated a desire to spend more time with her horses, agreed to stay until the end of the month and recommended a coworker to succeed her as store manager. (N.T. at 9.)

In response, Claimant denied that she ever told Employer she was leaving work to care for her horses. She further testified that she had accepted a reduced bonus amount in the past and would have accepted even less to keep her job; she complained that, although she remained for thirty days after tendering her resignation, Employer made no effort to retain her as an employee. (N.T. at 10–11.)

Accepting Gardner's testimony as credible, the referee determined that Claimant was ineligible for benefits under section 402(b) of the Law because she had made no attempt to maintain her employment relationship. (Record item no. 9.) Claimant appealed to the UCBR, which first remanded the matter for a hearing on the timeliness of Claimant's appeal.

A referee acting as hearing officer for the UCBR heard testimony from Claimant and her husband, Richard E. Henderson. The Hendersons testified that, on the afternoon of September 13, 2004, Mr. Henderson mailed a large envelope containing Claimant's appeal documents. They further testified that this envelope was not included in the record as a UCBR exhibit. As to the envelope that was in the record, the Hendersons testified that the envelope containing Claimant's appeal documents that was meter-marked September 22, 2004, received by the UCBR on September 27, 2004, and addressed from the referee's office in Harrisburg was not the envelope mailed by Claimant's husband. (See Record item no. 10.)

■ Following that hearing, the UCBR accepted the testimony of Claimant and Mr. Henderson and found that: the last date to appeal the referee's determination was September 14, 2004; Mr. Henderson filed Claimant's appeal on September 13, 2004; and the envelope containing Claimant's appeal is not in the record. Based on these findings, the UCBR concluded that Claimant's appeal was timely. With respect to the merits of the case, the UCBR accepted Claimant's testimony at the initial hearing and determined that Employer's suspension of bonus payments for the remainder of the fiscal year constituted a substantial, unilateral change in the terms and conditions of Claimant's employment, which established necessitous and compelling reasons for Claimant to voluntarily

---

**3.** During questioning by the referee, Ms Gardner confirmed that Claimant's base salary was $30,000 per year plus bonuses. The referee did not ask Ms. Gardner whether Claimant's estimate of annual bonuses of $18,000 was accurate. The record contains no other evidence in this regard, but in its brief to this court, Employer implies that Claimant's estimate of financial loss is absurdly high.

Although not an issue on appeal, we wish to highlight the importance of the referee's responsibility under 34 Pa.Code 101.21, which provides that where a party is not represented by counsel, the referee should advise him of his rights, aid him in examining witnesses and give him every assistance compatible with the impartial discharge of the referee's official duties. This provision requires the referee to participate in the hearing in a manner and to the extent necessary for the facts of the case to be adequately developed, thus ensuring that "compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, thoroughly developed, entitle the claimant to benefits." *Robinson v. Unemployment Compensation Board of Review*, 60 Pa. Cmwlth. 275, 431 A.2d 378, 380 (1981).

leave her employment. Accordingly, the UCBR reversed the referee's denial of benefits,[4] and Employer now appeals to this court.[5]

■ Employer first argues that the UCBR erred in determining that Claimant's appeal was timely. Employer argues that Claimant's appeal is date-stamped as received by the UCBR on September 27, 2004, and that the envelope containing that appeal is postmarked September 22, 2004, beyond the fifteen-day appeal period. Employer asserts that, even if the record includes the wrong envelope, the UCBR erred in crediting testimony concerning the date the appeal was mailed; Employer maintains that, under these circumstances, the UCBR was required to look at the date it received the appeal. We disagree.

Determination of the filing date of an appeal to the UCBR is governed by the provisions of 34 Pa.Code § 101.82(b)(1), which provides that where a party files an appeal to the UCBR by United States mail, the filing date is determined by the date of the official United States Postal Service (USPS) postmark on the envelope containing the appeal, a USPS Form 3817 (certificate of mailing) or a USPS certified mail receipt. 34 Pa.Code § 101.82(b)(1)(i). If none of those methods are available, the determination may be based on the date of a postage meter mark. 34 Pa.Code § 101.82(b)(1)(ii). If the filing date cannot be determined in accordance with subsections (i) or (ii), the filing date "will be the date recorded by the Department, the workforce investment office or the Board

when it receives the appeal." 34 Pa.Code 101.82(b)(1)(iii). Employer contends that the regulations setting forth the process for determining the appeal date must be strictly adhered to, or else parties could circumvent the regulations by asserting that the UCBR lost the envelope containing their appeal.

In response, the UCBR argues that the envelope containing Claimant's appeal *was* lost, in this case, by the referee. The UCBR asserts that the testimony of Claimant and her husband was sufficient to establish that the original envelope is not in the record due to an administrative breakdown. The UCBR also notes that the date the referee received Claimant's appeal is not in the record because the referee failed to receipt-stamp the appeal before forwarding it to the UCBR. The UCBR argues that, under these facts, 34 Pa.Code § 101.82(b)(1)(iii) does not apply. We agree with the UCBR that, because the record reflects that Claimant's inability to prove the timeliness of her appeal pursuant to 34 Pa.Code § 101.82(b)(1) is due solely to the referee's failure to retain Claimant's original envelope or date-stamp Claimant's appeal, it was proper for the UCBR to consider the testimony of Claimant and her husband to determine that the appeal was timely filed.

■ However, with regard to the merits of this case, we agree with Employer that the record does not support the UCBR's conclusion that Claimant is entitled to compensation. The UCBR disregarded substantial evidence, provided by Claimant

4. The UCBR, as fact-finder, is not bound by the referee's credibility determinations and can reverse the referee's decision as long as its reasons for reversal are plain from the record and adequate to permit effective judicial review. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

5. Our scope of review is limited to determining whether the adjudication is in accordance with the law, whether constitutional rights were violated and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

herself, establishing that she did not take any reasonable steps to maintain her employment. (*See* Record item no. 2; N.T. at 4–5.) According to Claimant's testimony, Employer attempted to cancel Claimant's bonuses several times over the course of her employment, but when Claimant protested, Employer ultimately paid Claimant the bonuses. (Record item no. 8, N.T. at 5, 12.) However, when Employer informed Claimant in August of 2003 that bonuses would be suspended, Claimant did not protest; in fact, Claimant worked for another two months before submitting her written notice of resignation.[6] Then, after giving two weeks' notice without explanation, Claimant offered to stay for the remainder of the month, and Employer accepted her offer.

A claimant is ineligible for compensation if her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. § 802(b). Cause of a necessitous and compelling nature has been defined as circumstances that produce real and substantial pressure to terminate one's employment and would compel a reasonable person to do the same. *Phoenix Women's Health Center v. Unemployment Compensation Board of Review*, 695 A.2d 466 (Pa. Cmwlth.1997). Here, the UCBR focused on Employer's suspension of bonuses and Claimant's estimated loss of $18,000 to conclude that Claimant had established necessitous and compelling cause to quit her job. However, in order to meet the burden of proving cause of a necessitous and compelling nature, a claimant must establish that she took all necessary and reasonable steps to preserve the employment relationship. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d

1042 (Pa.Cmwlth.2002). The UCBR did not address this element of Claimant's burden in its decision, and the record does not support the UCBR's assertions in its brief on appeal.

Accordingly, we reverse.

### ORDER

AND NOW, this 16th day of August, 2005, the order of the Unemployment Compensation Board of Review, dated January 27, 2005, is hereby reversed.

---

**6.** In its brief, the UCBR states that, when Employer informed Claimant in 2003 of its intent to suspend bonuses, Claimant again "protested and gave thirty days notice." However, nothing in the record supports this statement or otherwise establishes that Claimant informed Employer of her reason for quitting.