WIT Strategy,                          :
                Petitioner        :
                               :
              v.              :
                               :
Unemployment Compensation              :
Board of Review,                       :  No. 1161 C.D. 2016
                Respondent     :  Submitted: December 9, 2016

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge[1]
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: November 27, 2017

          WIT Strategy (WIT) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) June 15, 2016 order affirming the Referee's decision concluding that Jillian Ivey's (Claimant) earnings with WIT are includable in her base year as wages for employment. WIT presents two issues for this Court's review: (1) whether the UCBR erred by determining that Claimant was a WIT employee rather than an independent contractor; and (2) whether WIT's due process rights were violated. After review, we affirm.

          On June 13, 2013, WIT extended Claimant an offer of employment as an associate earning $7,000.00 per month (base salary), plus a $400.00 monthly healthcare stipend which Claimant accepted. Claimant and WIT did not enter into an independent contractor agreement. Claimant's job duties included: media relations, ghost writing, communication strategy, speaking with the media, performing market

---

[1] This case was reassigned to the opinion writer on March 28, 2017.

research, positioning client products, and drafting website content and communication materials. WIT required Claimant to establish a limited liability company through which it would pay her.[2] On July 1, 2013, Claimant registered Jilletante Creative, LLC (LLC). Claimant is the sole member of the LLC, and it has no employees.

Claimant had a WIT e-mail address and a personal e-mail address. Claimant worked 40 hours per week for WIT, wherein she was responsible for servicing between five and seven of WIT's clients. WIT paid Claimant a commission based on a percentage of the income WIT received from the client accounts Claimant serviced, which was often over but never under the $7,000.00 per month base salary. When Claimant's commissions increased, WIT stopped paying Claimant the $400.00 healthcare stipend. WIT paid the LLC for Claimant's services. WIT did not withhold taxes from Claimant's pay, and issued the LLC a 1099 Tax Form for 2014 evidencing that Claimant earned $154,655.36.

On October 15, 2013, Claimant e-mailed WIT's managing partner Mark Naples (Naples) and asked if she could attend an event at Temple University. Naples responded: "I don't care WHERE you spend your time. I only care that you service your clients to the degree that I promised them." Notes of Testimony March 4, 2016 (N.T.) Ex. C-2, Reproduced Record (R.R.) at 94a. Notwithstanding, he criticized Claimant for taking breaks, expressed his dissatisfaction with the amount of time

---

[2] The Dissent completely ignores the undisputed fact that WIT **required** Claimant to form the LLC. The Dissent compounds this omission by stating that WIT reported Claimant's payment for services rendered on a Form 1099 as "an important factor" when in fact a Form 1099 is the only method to report payment from one corporate entity to another. Dissenting Op. at 6. Because WIT mandated Claimant to establish an LLC, the method of reporting payment for services based on the facts of this case is totally irrelevant. Further, the Dissent bases its conclusion that Claimant was an independent contractor on the fact that Claimant continued to operate as an LLC **after** her separation from WIT. However, anything that occurred with the LLC **after** the period of time at issue, i.e., the time Claimant worked for WIT, is irrelevant to the issues before the Court.

Claimant was spending with clients, and warned Claimant that she should "consider [her]self under review."[3] *Id.*

In August/September 2014, WIT assigned Claimant managerial duties. In addition, WIT requested that Claimant perform a task for one of its clients which required Claimant to perform research as well as understand the client's reports and issues, but Claimant could not reach the client. Claimant asked Naples if he could help her get in touch with WIT's contact so she could perform the requested work. Moreover, during this time period, Naples advised Claimant that she was not responding correctly to e-mails, so he instructed her on the proper protocol. Dissatisfied with Claimant's work, WIT demoted Claimant to work as a tactician which was a complete change in her responsibilities. Her new duties required her to take notes on calls and engage with reporters, for which she earned less compensation, between $9,000.00 and $10,000.00 per month. WIT ended the employment relationship on April 1, 2015, due to its dissatisfaction with Claimant's tactician work.

Claimant applied for UC benefits. On May 5, 2015, the Erie UC Service Center determined that Claimant was not financially eligible for UC benefits because she had zero wages from employment for base year 2014.[4] Claimant appealed and a Referee hearing was held on July 30, 2015.[5] On August 14, 2015, the Referee vacated the UC Service Center's determination, and remanded the case to the UC Service Center to determine if the remuneration WIT paid Claimant through the LLC

---

[3] The Dissent disregards this portion of the e-mail and carves out only the first part of the email as indicia that WIT had no control over the "time, place and manner in which Claimant completed her projects." Dissenting Op. at 6. The latter part of the e-mail proves otherwise.

[4] Although there is a copy of the May 5, 2015 UC Service Center determination in the record, *see* R.R. at 108a, the Referee's decision states that the hearing was the result of a June 29, 2015 UC Service Center determination which does not appear in the record. *See* R.R. at 104a.

[5] Claimant appeared at the Referee hearing but WIT did not. WIT claims it did not receive the hearing notice. Notwithstanding, the certified record does not contain a hearing transcript.

constituted wages for employment. On September 28, 2015, the UC Service Center issued a revised determination finding Claimant financially ineligible for UC benefits.[6] Claimant appealed from that determination.

On November 6, 2015, the Referee vacated the UC Service Center's determination, and remanded the matter to the UC Service Center to refer the action to UC Tax Services to determine whether the remuneration WIT paid Claimant through the LLC constituted wages for employment.[7] On December 16, 2015, the UC Service Center issued a revised determination, again finding Claimant was financially ineligible for UC benefits.[8] Claimant appealed from the UC Service Center's determination. However, Claimant's appeal was inadvertently forwarded to the UCBR as an appeal from the August 14, and November 6, 2015 Referee decisions. *See* R.R. at 98a. On February 10, 2016, the UCBR dismissed the appeal from the Referee decisions, and directed that Claimant's appeal from the December 16, 2015 UC Service Center determination be forwarded to a Referee for adjudication.

A Referee hearing was held on March 4, 2016. On March 17, 2016, the Referee ruled that "the remuneration that WIT issued to [C]laimant through [the] LLC . . . is not excluded from the definition of 'employment.' The UC Service Center . . . must . . . determine the amount of wages paid during each quarter of her base year to determine her financial eligibility for UC [benefits]." R.R. at 125a. Accordingly, the Referee vacated the UC Service Center's December 16, 2015

---

[6] The September 28, 2015 determination is referenced in the Referee's November 6, 2015 decision, *see* R.R. at 102a, and the UCBR's February 10, 2016 decision. *See* R.R. at 98a. However, the September 28, 2015 determination is not in the record.

[7] Although the Referee's November 6, 2015 decision states that a hearing was held, the date of the hearing is listed as November 16, 2015, which is five days after the decision and there is no record of said hearing. *See* R.R. at 102a.

[8] The December 16, 2015 determination is referenced in both the Referee's March 17, 2016 decision, *see* R.R. at 123a, and the UCBR's February 10, 2016 decision. *See* R.R. at 98a. However, the December 16, 2015 determination does not appear anywhere in the record.

4

determination and remanded the matter to the UC Service Center to issue a revised notice of financial determination. WIT appealed to the UCBR. On June 15, 2016, the UCBR affirmed the Referee's decision and ordered that "[i]f it has not already done so, the [UC Service Center] shall calculate [C]laimant's financial entitlement to [UC] benefits. Thereafter, . . . the [UC Service Center] shall perform an investigation and determine [C]laimant's eligibility based on her separation from work with WIT." R.R. at 176a. WIT appealed to this Court.[9]

WIT first argues that the UCBR erred by determining that Claimant was a WIT employee rather than an independent contractor. Specifically, WIT contends this conclusion is contrary to law and unsupported by substantial evidence.

Initially,

[p]ursuant to Section 402(h) of the [UC] Law [(Law)[10]], an employee is ineligible for benefits for any week in which he is engaged in 'self-employment.' The Law does not define the term 'self-employment'; however Section 4(*l*)(2)(B) of the Law defines 'employment' as follows:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

---

[9] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[10] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h).

5

43 P.S. § 753(*l*)(2)(B). **Section 4(*l*)(2)(B) of the Law creates a presumption that an individual working for wages is an employee**.

The burden to overcome the 'strong presumption' that a worker is an employee rests with the employer. To prevail, an **employer must prove: (i) the worker performed his job free from the employer's control and direction, and (ii) the worker, operating as an independent tradesman, professional or businessman, did or could perform the work for others, not just the employer**. '[T]his two-pronged test is conjunctive and both prongs must be satisfied in order for persons rendering services for wages to be considered independent contractors.' [*Kurbatov v. Dep't of Labor & Indus., Office of Unemployment Comp., Tax Servs.,* 29 A.3d 66,] 70 [(Pa. Cmwlth. 2011)] (quoting *Electrolux Corp. v. Dep't of Labor & Indus., Bureau of Employer Tax Operations,* 705 A.2d 1357, 1360 (Pa. Cmwlth. 1998)).

A determination as to the existence of an employer/employee relationship is a question of law that depends on the unique facts of each case.

*Quality Care Options v. Unemployment Comp. Bd. of Review,* 57 A.3d 655, 659-60 (Pa. Cmwlth. 2012) (citations omitted; emphasis added).

With respect to the first prong, WIT asserts that it did not control the manner in which Claimant rendered her services, but only the parameters for the services Claimant provided. WIT cites *Venango Newspapers v. Unemployment Compensation Board of Review,* 631 A.2d 1384 (Pa. Cmwlth. 1993), to support its position. In *Venango,* newspaper carriers were considered independent contractors because the carriers had **complete control** over the manner in which the papers were delivered and they did not receive an hourly wage. WIT further maintains that it merely exercised quality control over Claimant's work. WIT relies on *CE Credits OnLine v. Unemployment Compensation Board of Review,* 946 A.2d 1162 (Pa. Cmwlth. 2008), wherein the Court held: "'Control' for purposes of Section 4(*l*)(2)(B) of the Law is not a matter of approving or directing the final work product so much as

6

it is a matter of **controlling the means of its accomplishment**." *Id.* at 1169 (emphasis added).

> Here, the UCBR opined:

> [T]he [UCBR] does not find that WIT has carried its burden of proving that [C]laimant worked free from direction and control. **[C]laimant worked 40 hours per week servicing 5-7 of WIT's clients**. **There is no evidence that [C]laimant procured the clients on her own**. When [C]laimant began to make more money, WIT **unilaterally decided to stop paying her the $400[.00] healthcare stipend** it originally offered her. **WIT expressed dissatisfaction at the amount of breaks [C]laimant was taking during the day and the amount of time [C]laimant was spending with the clients**, and placed her under review. **WIT gave [C]laimant managerial duties, then instructed [C]laimant to perform research, understand reports, and understand issues in regard to a specific client**. **WIT instructed [C]laimant on how to answer e-mails**, and when WIT was dissatisfied with [C]laimant's work, it demoted [C]laimant to a tactician. These facts do not evidence a lack of control. Rather, it shows that WIT retained control over [C]laimant as an employee.

UCBR Dec. at 5 (emphasis added). The factors the UCBR relied upon, i.e., WIT regulating the number of Claimant's daily breaks, managing the amount of time Claimant spent with clients, and instructing Claimant on how to perform research, understand reports and answer e-mails, in addition to WIT unilaterally terminating Claimant's healthcare stipend, reducing Claimant's base salary, changing Claimant's work duties and demoting Claimant, clearly indicate more than WIT merely controlling the parameters for Claimant's services and WIT's mere approval of her final work product. Rather, they demonstrate that WIT had control over the means of how Claimant accomplished her work. *See Quality Care Options; Venango.* "It is presumed that a person is an employee rather than an independent contractor. [The putative e]mployer has the burden of proving otherwise." *Hartment v.*

*Unemployment Comp. Bd. of Review,* 39 A.3d 507, 511 (Pa. Cmwlth. 2012) (citation omitted). Here, WIT has failed to meet its burden. Accordingly, this Court discerns no error in the UCBR's conclusion that WIT retained control over Claimant as an employee.

Relative to the second prong, WIT argues that Claimant was engaged in an independent trade, occupation, profession or business. Specifically, WIT contends that it permitted and encouraged Claimant to perform services for others. *See Applied Measurement Prof'ls, Inc. v. Unemployment Comp. Bd. of Review,* 844 A.2d 632 (Pa. Cmwlth. 2004) (Evidence that the claimant was capable of performing services for anyone and the nature of the service was such that the claimant was not compelled to look to a single employer in order to perform the services was sufficient to conclude the claimant was customarily engaged in an independent trade or business.). WIT further asserts that Claimant was not a WIT employee because she has a propriety interest in the LLC. *See Venango.*

> In the instant case, the UCBR concluded:

> The [UCBR] does not find that [C]laimant was operating a trade or business, customarily or otherwise. **The only reason [C]laimant formed the LLC was because WIT required it**, claiming that it needed to pay [C]laimant through the LLC. WIT also claimed that doing so was a 'common agency model' for its kind of agency. The [UCBR] does not credit WIT's testimony.[11] Rather, although [C]laimant did perform two projects for other entities, each for under $600[.00], **there is no evidence that [C]laimant solicited business through her LLC since its inception in 2013 through her termination in 2015**.

---

[11] "In [UC] proceedings, the [UCBR] is the ultimate fact finder, and it is empowered to resolve all conflicts in the evidence and to determine the credibility of witnesses." *Procito v. Unemployment Comp. Bd. of Review,* 945 A.2d 261, 262 n.1 (Pa. Cmwlth. 2008). "This Court's review of a decision by the [UCBR] does not permit it to reweigh the evidence or substitute its own findings for those made by the [UCBR]." *Chartiers Cmty. Mental Health & Retardation Ctr. v. Unemployment Comp. Bd. of Review,* 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016).

> [C]laimant worked for WIT 40 hours per week and did not have employees of the LLC to solicit business for her. Further, although WIT claimed that all its team members were required to have additional clients through their LLCs to share with it, **WIT did not prove that [C]laimant had such clients**. As [C]laimant did not operate a trade or business, but rather **the LLC was formed as a type of shell corporation**, the fact that [C]laimant was the single-member owner is not dispositive. [C]laimant was not customarily engaged in a trade, occupation, profession or business.

UCBR Dec. at 5 (emphasis added). Because WIT: (1) required Claimant to form the LLC, (2) did not prove that Claimant solicited business for the LLC, and (3) did not prove that the LLC had additional clients, this Court agrees with the UCBR's conclusion that the LLC was merely a shell corporation. The fact that WIT may have permitted or encouraged Claimant to solicit other clients is irrelevant. Importantly, the LLC was a single-person LLC and Claimant worked 40 hours a week for WIT's clients. "Indeed, because Claimant was fully engaged . . . with [WIT], she did not have the opportunity to serve others." *Sharp Equip. Co. v. Unemployment Comp. Bd. of Review,* 808 A.2d 1019, 1024 (Pa. Cmwlth. 2002). Therefore, Claimant did not have the time or ability to engage in an independent trade or business.[12]

---

[12] The Dissent in disagreeing with the Majority concerning Claimant not having an independent trade or business, states: "We have held that the relevant question is whether the putative employer **restricts the claimant from performing services for others**, not whether a claimant actually does so. *Stauffer*, 74 A.3d at 407. . . ." Dissenting Op. at 10 n.8 (emphasis added). However, the facts of the instant case clearly reveal that because Claimant worked 40 hours a week for WIT, the putative employer restricted Claimant's ability to work for others. Accordingly, contrary to the Dissent's assertion, the statement "whether WIT encouraged Claimant to work for others is irrelevant," is a correct statement of the law. *See Jia v. Unemployment Comp. Bd. of Review,* 55 A.3d 545, 549 (Pa. Cmwlth. 2012) ("despite the fact the claimant could work for others, the evidence did not show the claimant was customarily engaged in an independent business"); *Sharp Equip. Co. v. Unemployment Comp. Bd. of Review,* 808 A.2d 1019, 1024 (Pa. Cmwlth. 2002) ("because Claimant was fully engaged from 9:00 a.m. to 5:00 p.m. for a full week with [putative e]mployer, she did not have the opportunity to serve others").

Consequently, the Court holds that the UCBR properly ruled that Claimant was not engaged in an independent trade or business.

This Court notes that WIT placed great emphasis on the fact that the LLC had two clients in addition to WIT's clients and that Claimant testified that they were "former clients." R.R. at 75a. Although WIT's argument is based on its interpretation of Claimant's testimony that the "former clients" were the LLC's former clients, the testimony can just as easily be interpreted to mean that Claimant was referring to WIT's former clients. Given that we must "examine the testimony 'in the light most favorable to the prevailing party, [Claimant in this case, and] giv[e] [her] the benefit of any inference that can logically and reasonably be drawn from the evidence[,]'" we reject WIT's interpretation of Claimant's testimony.[13] *Johns v. Unemployment Comp. Bd. of Review,* 87 A.3d 1006, 1013 (Pa. Cmwlth. 2014) (quoting *Middletown Twp. v. Unemployment Comp. Bd. of Review,* 40 A.3d 217, 223 (Pa. Cmwlth. 2012)). Accordingly, the UCBR properly concluded that Claimant was a WIT employee rather than an independent contractor.

WIT next argues that its due process rights were violated because the Referee considered evidence that was lost or misplaced, and testimony that was taken in WIT's absence. "The law is clear that the [UCBR] is the ultimate finder of fact and arbiter of witness credibility. Thus, as long as the [UCBR's] factual findings are supported by substantial evidence, those findings are conclusive on appeal." *Killian-McCombie v. Unemployment Comp. Bd. of Review,* 62 A.3d 498, 500-01 (Pa. Cmwlth. 2013) (quoting *Bruce v. Unemployment Comp. Bd. of Review,* 2 A.3d 667, 671 (Pa. Cmwlth. 2010) (citation omitted)). Moreover, "[t]he UCBR, as fact-finder, is not bound by the [R]eferee's credibility determinations and can reverse the

---

[13] The Dissent states: "Whether these projects were completed for [Claimant's] former clients or clients formally associated with WIT is not relevant." Dissenting Op. at 10 n.7. However, if the projects were completed for WIT's former clients, it further evidences that Claimant was not actively seeking her own clients but rather servicing WIT as opposed to her LLC.

[R]eferee's decision as long as its reasons for reversal are plain from the record and adequate to permit effective judicial review." *Cumberland Valley Animal Shelter v. Unemployment Comp. Bd. of Review,* 881 A.2d 10, 13 n.4 (Pa. Cmwlth. 2005).

> Here, the UCBR explained:

> WIT argues that the Referee improperly relied on testimony from a prior hearing that was not introduced into the record and for which WIT never received notice. The [UCBR] agrees. The Referee made findings that were not supported by the record created at the March 4, 2016[] hearing. To the extent that she relied on testimony she recalled from a previous hearing, the transcript for which was not made part of this record, she erred. However, the [UCBR] denies WIT's request for a remand to a new Referee as the [UCBR] makes an independent review of the record.

UCBR Op. at 3. WIT asserts that, notwithstanding the UCBR's explanation, the UCBR nonetheless relied on testimony from the prior hearing. However, our review of the record does not disclose any such reliance, nor does WIT specify which findings the UCBR made that were not supported by the record created at the March 4, 2016 hearing. "Where, as here, the [UCBR] makes its own findings of fact, it is the [UCBR's] determination, rather than the Referee's, which is subject to our review." *Viglino v. Unemployment Comp. Bd. of Review,* 525 A.2d 450, 453 (Pa. Cmwlth. 1987). Thus, this Court discerns no violation of WIT's due process rights.

> WIT further contends:

> In addition to those errors explained in detail above, **the [UCBR] erroneously concluded (just as the Referee had done) that the [UC Service Center] had not conducted a wage investigation as ordered, 'instead deciding that as a single-member owner of a limited liability corporation, [C]laimant was considered similar to a sole proprietor and, thus, was a self-employed businessperson**.' As noted above, however, the Referee directed the [*UC*] *Service Center*, and not the *Tax Services Office*, to conduct an investigation. And, in fact, the UC Service Center did conduct an investigation, as memorialized by the Letter of

11

> Explanation Revised Notice of Financial Eligibility Wage Discrepancy dated December 14, 2015. As the letter shows, the UC Service Center predicated its post-investigation determination of ineligibility on its conclusion that Claimant was free from WIT's direction and control. As such, the [UCBR's] claim that the '[UC Service Center] did not perform an investigation' is demonstrably false, as is its assertion that the [UC] Service Center jumped to an ill-informed conclusion about Claimant's status based solely on the fact that her company is a single-member LLC.

WIT Br. at 34 n.14 (citations omitted; emphasis added).

However, on November 6, 2015, the Referee expressly "ORDERED that [this] appeal . . . is REMANDED to the Erie UC Service Center **to refer to UC Tax Services to determine whether the remuneration WIT paid** [C]**laimant through** [**the**] **LLC constitutes 'wages for employment'** and to issue notice of said determination in writing to both [C]laimant and WIT." R.R. at 103a (emphasis added). At the March 4, 2016 hearing, the Referee questioned the UC Tax Services Representative with respect to the above order:

> R[eferee] Okay. [UC Tax Services Representative Welbon] Billups, I just have a few questions for you first.
>
> A[gency] R[epresentative] Yes.
>
> R This document [Printout entitled Wage Investigation System] that I marked as Exhibit 17, who made the entries that are typed in there?
>
> AR A tax agent from our office and also myself.
>
> . . . .
>
> R So according to that -- well, first of all, since I'm going to assume without having a copy of it that there was a Financial Determination issued on December 16th because there's a printout in here . . . that tells me that, and it also says no Employer for [Claimant] date April 25, 2015. Did your office send the UC Service Center some type of report

12

or information which they reached that conclusion on December 16th of last year?

AR I believe the Determination was based strictly on the fact that [Claimant]. . . [.]

R Hang on. You saw what I said earlier. **I remanded this case a couple of times trying to get the** [UC] **Service Center to get actual information to do an investigation as to whether this Claimant was paid wages for employment in her base year. My question is did that ever happen**?

AR No. We didn't have to do that.

. . . .

R Yes. Hang on. Let me get the question on the record. Did the [UC] Service Center refer this case to your office for an investigation of that subject?

AR Yes.

R Okay. Was there a report done on that subject?

AR Yes.

R When?

AR The report is in that file right there. That Wage Investigation. That's the report.

R Okay. Can you point out. . . [.]

AR That's our, that's our Determination.

R Okay. Can you point out where on there the date on which that would have been transmitted to the [UC] Service Center because I'm looking at a printout from January? Obviously they couldn't have used that when they made their December Determination. What I'm trying to find out here is whether [UC] Tax Services informed them of something before they issued that December 16 Financial Determination and if so, would that, Exhibit 17, reflect it.

13

AR Yes.

R Can you point out where?

AR On the 13th of January.

R That's not before December 16th. . . . **[D]oes that printout indicate anywhere on it that a tax agent sent the UC Service Center information prior to or we'll say after September 28 and prior to December 16 of which it could make a new Financial Determination?**

AR **No**.

R Well then again they didn't comply with my Remand Order.

AR We didn't have to because our Determination is that [] Employer, [the LLC], is exempt from our unemployment tax law.

R Yes. That's your legal -- hang on. Pass the exhibit back up, please. That's your legal position here.

AR Yes it is.

R **What I'm asking is did anybody conduct an investigation as per my Order**?

AR **Well, actually we**. . . [.]

R **Can you give any testimony that you**. . . [.]

AR **No**.

R . . . would like to give on that?

AR No I cannot. No.

R So in other words, the UC Service Center did not comply with the Order instructing it to . . . [.]

AR Well, I don't work for the UC Service Center.

14

R Hang on. As far as you know, they didn't comply with the Order instructing them to refer it for - investigation. Is - that correct as far as you know?

AR I can't speak for the UC Service Center.

R As far as you know is the question. Is that correct?

AR Yes.

R Okay. Well, is there anything else you would like to add?

AR No.

R Well, let me just ask. You started to make a legal argument. Basically what you're saying is that the Claimant here as a human cannot be treated as the equivalent as her LLC when it comes to counting the money that's paid to her during the base year. Is that correct?

AR No. **I'm saying as an LLC, the owner of the LLC, the wages that the owner earns from the LLC is exempt from Pennsylvania Unemployment**.

. . . .

AR Well, we consider a sole LLC as a sole proprietorship. It's one of the things that an individual entity. . . [.]

R Okay. **So what you're telling me is that you consider an individual to be the same thing as that individual's limited liability company that she created**?

AR **Exactly**.

R **And the reason why you're saying that by definition Section 402(b)** [sic] **[of the Law] excludes any money that the LLC makes from the definition of employment**?

AR **Yes**.

. . . .

R Is there anything else you would like to add?

AR No.

15

R.R. at 64a-67a (emphasis added).

The above testimony clearly demonstrates that the Referee and the UCBR properly concluded that no investigation was conducted because as the UC Tax Services Representative testified, it was the UC Tax Services' belief that it was not necessary since all LLCs are exempt from the definition of employment.[14] Accordingly, the Referee and the UCBR properly concluded that, contrary to the remand order, no wage investigation was performed.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[14] The Dissent maintains that because the UCBR referenced the Department of Labor in its explanation as to why it rejected the Department's proclamation that wages earned by an LLC can never be employment, "the hearing has been so tainted that the only appropriate remedy is a remand for a new hearing[.]" Dissenting Op. at 12. However, the reference to the Department of Labor is irrelevant to the argument that the Referee relied on the first hearing. Moreover, notwithstanding the comments relative to the Department of Labor, the UCBR's conclusion that "[t]he Department should have performed the investigation as ordered by the Referee" is correct and supported by the record. UCBR Dec. at 4.

16

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

WIT Strategy,                :
          Petitioner    :
                  :
        v.           :
                  :
Unemployment Compensation  :
Board of Review,         :   No. 1161 C.D. 2016
          Respondent  :

### O R D E R

AND NOW, this 27th day of November, 2017, the Unemployment Compensation Board of Review's June 15, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

WIT Strategy,                   :
          Petitioner        :
                              :
        v.                   :  No. 1161 C.D. 2016
                              :  Submitted:  December 9, 2016
Unemployment Compensation  :
Board of Review,            :
          Respondent     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT          FILED: November 27, 2017

Respectfully, I dissent.  As the UC Service Center found, three times, Jillian Ivey (Claimant) worked for WIT Strategy (WIT) as an independent contractor, as that term has been defined under the Unemployment Compensation Law (Law).[1]  I would reverse the adjudication of the Unemployment Compensation Board of Review (Board) holding otherwise.

WIT Strategy provides public relations and communication services to clients.  In 2013, WIT offered to contract with Claimant to provide these services on referral from WIT.  At that time, Claimant formed Jilletante Creative, LLC, and she is its sole owner.  WIT compensated Jilletante Creative different amounts each month, depending on the amount of work done for WIT accounts.  Claimant described the compensation as "30 to 80 percent of the account retainers for the accounts that I worked on," depending on her account responsibilities.  Notes of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 42 P.S. §§751-918.10.

Testimony, 3/4/2016, at 16 (N.T. ___); Reproduced Record at 72a (R.R. ___). In 2014, WIT issued a Form 1099 to Jilletante Creative for $154,655.36; individual income taxes for Claimant were not withheld. During this period of time, Jilletante Creative also provided consulting services to two clients that were not referred to her by WIT.

In September 2014, Claimant did not complete an assignment on a WIT account. WIT revised her responsibilities to those of a "tactician;" as such, she took notes at meetings with WIT clients and drafted "byline copy." N.T. 26; R.R. 82a. This revision in duties reduced the compensation available to Jilletante Creative to $9,000 or $10,000 per month. N.T. 25; R.R. 81a. On April 1, 2015, WIT and Jilletante Creative ended their relationship.

Dispositive of Claimant's eligibility for unemployment compensation is Section 4(l)(2)(B) of the Law, which states, in pertinent part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that – (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(l)(2)(B). It is the burden of the putative employer to establish each prong of the independent contractor exception, and WIT did so.

The first prong of the Section 4(l)(2)(B) test is known as the "control" test and considers several factors. A written agreement that describes the claimant as an independent contractor, although not dispositive, is a significant factor. *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 889 (Pa. Cmwlth. 2011).

MHL-2

Other relevant factors include: "'whether there is a fixed rate of remuneration; whether taxes are withheld from the [individual]'s pay; whether the employer supplies the tools necessary to carry out the services; whether the employer provides on-the-job training; and whether the employer holds regular meetings that the [individual is] expected to attend.'" *Id.* (quoting *CE Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1168 (Pa. Cmwlth. 2008)). No one factor is dispositive of the question of control.

The Board explained its finding that WIT controlled Claimant as follows:

> The [C]laimant worked 40 hours per week servicing 5-7 of WIT's clients. There is no evidence that the [C]laimant procured the clients on her own. When the [C]laimant began to make more money, WIT unilaterally decided to stop paying her the $400 healthcare stipend it originally offered her. WIT expressed dissatisfaction at the amount of breaks the [C]laimant was taking during the day and the amount of time the [C]laimant was spending with clients, and placed her under review. WIT gave the [C]laimant managerial duties, then instructed the [C]laimant to perform research, understand reports, and understand issues in regard to a specific client. WIT instructed the [C]laimant on how to answer e-mails, and when WIT was dissatisfied with the [C]laimant's work, it demoted the [C]laimant to a tactician. These facts do not evidence a lack of control. Rather, it shows that WIT retained control over the [C]laimant as an employee.

Board Adjudication, 6/15/2016, at 5; R.R. 175a. This explanation is flawed for several reasons.

First and foremost, the Board conflated the concept of "quality control" with the type of control exercised by a true employer. The latter controls the time, place and manner by which the work is done.[2] This Court has explained:

> "[C]ontrol *of the result only and not the means of accomplishment*" *does not transform an independent contractor relationship into an employer-employee relationship.* Every job, whether performed by an employee or by an independent contractor, has parameters and expectations. "Control" for purposes of Section 4(l)(2)(B) of the Law is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment.

*CE Credits OnLine*, 946 A.2d at 1169 (quotation omitted).

Second, the Board's explanation is not supported by the record. The Board claims that WIT "instructed" Claimant on "how to respond correctly [to clients by e-mail]." Board Adjudication, 6/15/2016, at 2, Finding of Fact (F.F.) No. 18; R.R. 172a. This finding of fact is not supported by substantial evidence. WIT's witness testified that Claimant sent text and e-mail messages intended for her husband to persons at WIT. In addition, in her e-mails to news reporters, Claimant called one reporter by the wrong name.[3] Bringing these mistakes to Claimant's

---

[2] The failure to distinguish between quality control and actual control began with the Referee. In determining that Claimant was under WIT's direction and control, the Referee stated:

> While the [C]laimant worked independently to some extent, WIT maintained ultimate control over the work product, since WIT[']s own clients ultimately had to be satisfied with such product. WIT's managing partner became dissatisfied with the [C]laimant's performance, in part due to one or more clients' statements.

Referee Decision, 3/17/2016, at 3; R.R. 125a. This analysis supports the opposite conclusion. WIT had expectations about the work Claimant sent to clients but allowed her to work independently in its execution, a prime example of quality control versus actual control.

[3] Mark Naples, a principal of WIT, testified that WIT was unsatisfied with the quality of Claimant's work:

attention did not constitute "instruction" on how to compose e-mails; it was not "job training." WIT was entitled to examine the quality of Claimant's work as a public relations professional. *See CE Credits Online*, 946 A.2d at 1169. For purposes of the first prong, "control" requires evidence that the putative employer directs the time, place and manner by which the work is done. It is not "control" to object when a professional consultant sends text messages to the wrong recipient.

The Board's own factual finding established that WIT did not exercise the control of an employer. When Claimant e-mailed Mark Naples, a principal of WIT, for permission to speak at Temple University, he responded, "I don't care WHERE you spend your time. I only care that you service your clients to the degree that I promise them." Board Adjudication, 6/15/2016, at 2, F.F. No. 14; R.R. 172a (emphasis in original).[4] This finding alone establishes that WIT did not control the

---

> [H]er work had become so sloppy she was sending me text and e-mails that she intended for Ross, her husband who is an attorney. She had been sending reporters notes that had the other reporters (sic) name on it, sending Mike something intended for Jim.

N.T. 27; R.R. 83a.

[4] The majority contends that the latter portion of the e-mail proves that WIT controlled the time, place and manner in which Claimant completed her projects. Majority, slip op. at 3 n.3. I disagree. The e-mail, in total, reads:

> Jill –
>
> I don't care WHERE you spend your time. I only care that you service your clients to the degree that I promise them.
>
> Seeing as you are back from the break you're just back from, think this through. Are you up to speed on your accounts?
>
> Should you have sent me this today?
>
> You need to get smarter on your own internal PR if you want me to trust you more on the PR you conduct for our clients. Right now, please consider yourself under review. We will discuss what this means moving forward by the end of this week.

time, place, and manner in which Claimant completed her projects. WIT did have expectations about the quality of the projects, as does every person that engages the services of an independent contractor.

The compensation paid to Jilletante Creative was reported on a Form 1099, which is an important factor in the two-prong analysis. *Stage Road Poultry*, 34 A.3d at 889. In addition, her compensation was not static, but changed monthly. *Id.* Initially, WIT guaranteed Claimant compensation of $7,400 per month,[5] but this quickly rose to over $12,000 per month in 2014. Board Adjudication, 6/15/2016, at 2, F.F. Nos. 9, 11; R.R. 172a. The Board simply disregarded these findings of fact in its control analysis because they do not support its desired conclusion that Claimant was a WIT employee.

The record is replete with evidence of WIT's *lack of control* over Claimant. Claimant did not have a desk at any WIT office and was not required to perform her work at any particular or defined location; she set her own hours. R.R. 7a, 8a, 13a, 17a. WIT did not provide any training to Claimant or exercise any direct oversight over Claimant's work. *Id.* at 7a, 16a, 17a. WIT did not withhold taxes; did not provide Claimant benefits; and did not reimburse Claimant for her business expenses. *Id.* at 16a-17a. Finally, WIT allowed Claimant to perform her

---

But, I am not happy. You need to take ownership of your accounts ASAP and demonstrate to me that you can keep up on Tapad too.

Mark

R.R. 94a (emphasis in original). The entirety of the e-mail supports the conclusion that Claimant worked not as an employee but as an independent contractor. Naples stated that Claimant, in broad terms, had to "take ownership" of *her* accounts and demonstrate to him that she can handle client demands. Absent from this email is any direction to Claimant on when, where, or how to accomplish this goal.

[5] This included what was called a $400 health insurance "stipend." How Claimant spent this so-called stipend was for her to decide. Claimant testified that the stipend ended after a few months.

assignments through sub-contractors of her choosing. *Id.* at 17a. The Board failed to consider any of these factors, and this was error.

In short, the Board erred in concluding that WIT's control over Claimant was the control of a true employer. In so concluding, the Board capriciously disregarded the unrebutted evidence that refuted this conclusion as well as its own findings of fact.

The second prong of the independent contractor analysis looks to whether the claimant was "customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. §753(l)(2)(B). For that determination, we consider "'whether the individual was capable of performing the activities in question [for] anyone who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services.'" *Stage Road Poultry*, 34 A.3d at 891 (quoting *Venango Newspapers v. Unemployment Compensation Board of Review*, 631 A.2d 1384, 1388 (Pa. Cmwlth. 1993)). It is not necessary that the claimant actually succeed in persuading others to engage her services. *Stauffer v. Unemployment Compensation Board of Review*, 74 A.3d 398, 407 (Pa. Cmwlth. 2013).

The Board offered the following rationale for its conclusion that Claimant was not engaged in services customarily provided by an independent trade or business:

> The only reason the [C]laimant formed [Jilletante Creative, LLC] was because WIT required it, claiming that it needed to pay the [C]laimant through the LLC. WIT also claimed that doing so was a "common agency model" for its kind of agency. The Board does not credit WIT's testimony. Rather, although the [C]laimant did perform two projects for other entities, each for under $600, there is no evidence that the [C]laimant solicited

MHL-7

business through her LLC since its inception in 2013 through her termination in 2015. The [C]laimant worked for WIT 40 hours per week and did not have employees of the LLC to solicit business for her. Further, although WIT claimed that all its team members were required to have additional clients through their LLCs to share with it, WIT did not prove that the [C]laimant had such clients. As the [C]laimant did not operate a trade or business, but rather the LLC was formed as a type of shell corporation, the fact that the [C]laimant was the single-member owner is not dispositive. The [C]laimant was not customarily engaged in a trade, occupation, profession, or business.

Board Adjudication, 6/15/2016, at 5; R.R. 175a.[6] The Board went on to observe, without any evidence in the record, that the United States Department of Labor believes that some employers are "requiring employees to form single-member LLCs in order to avoid the protection employees enjoy under various labor laws." *Id.* at 3; R.R. 173a.

The legal form by which Claimant provided public relations and communications services to WIT-provided clients and to her own clients is irrelevant. A sole proprietor may establish a single-member LLC for many reasons, the obvious being a desire to limit individual liability. It is not known what the Board meant by a "shell corporation," and there is no evidence on this point. A limited liability company is not even a corporation. The Pennsylvania Associations Code provides as follows:

> One or more persons may act as organizers to form a limited liability company ….

15 Pa. C.S. §8821. A single-member LLC, such as Jilletante Creative, is a perfectly lawful and valid alternative to a sole proprietorship.

---

[6] Claimant did not refute the testimony of WIT's principal that WIT operates on a "common agency model," even though she is knowledgeable of this industry. N.T. 25; R.R. 81a. The Board ignored Employer's testimony by deciding not to credit it.

Claimant continued to operate as an LLC even after her separation from WIT. The record includes Claimant's two-page detailed proposal to a potential client on "Jilletante Creative, LLC" letterhead, signed as "Jilletante Creative, LLC; By: Jillian Ivey, sole member." R.R. 10a-11a. Jilletante Creative is not a sham or "shell" corporation, and characterizing it as such is a red herring in the analysis of whether Claimant worked for WIT clients as an employee of WIT or as an independent contractor.

Claimant was free and able to provide services to anyone, as she did before entering into a contract with WIT. The Board acknowledged this inescapable fact but minimized its significance by noting that Jilletante Creative had a small base of non-WIT clients. This is not relevant. The pertinent question is whether WIT restricted Claimant from performing services for others, not whether Claimant, or Jilletante Creative, actively pursued other clients. *See Stauffer*, 74 A.3d at 407. That a claimant may be indolent, unsuccessful in obtaining other clients, or simply satisfied working with the clients referred by one source does not transform an independent contractor relationship into that of employer/employee. *Id.* Claimant conceded that she was free to do other work and did work for clients with no connection to WIT. N.T. 13; R.R. 69a.[7] Indeed, WIT encouraged Claimant to develop Jilletante Creative's own client base.[8]

---

[7] The majority states that Claimant's testimony regarding the projects she completed for "former clients" could mean she completed projects for WIT's former clients. *See* Majority slip op. at 9. Whether these projects were completed for her former clients or clients formerly associated with WIT is not relevant. The point is that Claimant did work for clients not referred by WIT who directly compensated Jilletante Creative for these services.

[8] The majority asserts that "[t]he fact that WIT may have permitted or encouraged Claimant to solicit other clients is irrelevant." *Id.* I disagree. We have held that the relevant question is whether the putative employer restricts the claimant from performing services for others, not

Finally, the Board's finding that Claimant worked 40 hours a week on WIT accounts does not *ipso facto* make her an employee of WIT. In *Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545 (Pa. Cmwlth. 2012), this Court held that because the claimant needed employer's permission to deviate from the prescribed time or place of work, the claimant was in an employment relationship. By contrast, here, the Board found, specifically, that Claimant was free to do her work for WIT clients at the times and place of her choosing. Board Adjudication, 6/15/2016, at 2, F.F. No. 14; R.R. 172a. Notably, Jilletante Creative was free to engage subcontractors to complete WIT projects. R.R. 17a.

WIT carried its burden in establishing that Claimant was free from WIT's control and was engaged in an independent business. Accordingly, I would reverse the decision of the Board.

WIT contends that even if this Court agrees with the Board, its hearing violated due process. The essential elements of due process are notice and an opportunity to be heard. *Groch v. Unemployment Compensation Board of Review*, 472 A.2d 286, 287-88 (Pa. Cmwlth. 1984). I agree that WIT was not afforded due process of law.

The UC Service Center issued three determinations that the compensation paid by WIT to Claimant, directly or through Jilletante Creative, did not constitute wages for employment because she provided her consulting services as an independent contractor. After the UC Service Center initially denied benefits,

---

whether a claimant actually does so. *Stauffer*, 74 A.3d at 407 ("The issues in determining whether the type of work constitutes an independent trade or business are whether the claimant was restricted from performing the services for others and whether anything in the nature of the work limits it to a single employer, not whether the claimant chooses to work for third parties."). Here, Claimant chose to limit her engagements.

MHL-10

Claimant appealed, and the Referee conducted a hearing on July 30, 2015, at which only Claimant appeared because WIT had not been given notice. Determining that Claimant was an employee of Jilletante Creative, LLC,[9] the Referee remanded to the UC Service Center to determine whether compensation paid by WIT to Jilletante Creative constituted "wages for employment." On remand, the UC Service Center again reached the conclusion that the remuneration was not wages for employment because Claimant was an independent contractor. Following a second appeal from Claimant, the Referee remanded again to the UC Service Center for another look at its decision.[10] After the second remand, the UC Service Center again found Claimant to be an independent contractor and ineligible for benefits.

Claimant appealed, and a second hearing before the same Referee took place on March 4, 2016, on the UC Service Center's third determination. In the meantime, the record of the first hearing had been destroyed. Nevertheless, throughout the second hearing, the Referee referred to the evidence presented at the first hearing. N.T. 12-13, 15; R.R. 68a-69a, 71a. The Referee's use of evidence presented at a hearing, of which WIT had neither notice nor opportunity to participate, violated due process.

The Board recognized the due process problem with the Referee's conduct in this regard and stated:

---

[9] In other words, Claimant was self-employed, just as a sole proprietor is self-employed. The employer and employee are one and the same.

[10] The Referee's remand order stated:

> On September 28, 2015, the Pennsylvania Department of Labor and Industry ("L&I") issued a Revised Notice of Financial determination again denying the [C]laimant benefits on the ground that she had no wages paid to her during her base year, but not addressing whether, and why, the remuneration WIT paid the [C]laimant through her LLC is not "wages for employment[.]"

R.R. 102a. The Referee appears determined to have Claimant be found an employee of WIT.

MHL-11

> WIT argues that the Referee improperly relied on testimony from a prior hearing that was not introduced into the record and for which WIT never received notice. The Board agrees. The Referee made findings that were not supported by the record created at the March 4, 2016, hearing. To the extent that she relied on testimony she recalled from a previous hearing, the transcript for which was not made part of this record, she erred.

Board Adjudication, 6/15/2016, at 3; R.R. 173a. In spite of this error by the Referee, the Board denied WIT's request to remand for a new hearing before a new referee, asserting that the Board's review cured the due process violation. Unfortunately, the Board did not effect a cure. To the contrary, the Board compounded the Referee's error by engaging in a discussion of the United States Department of Labor's belief that the legal entity known as an LLC is being abused to avoid labor laws. What the United States Department of Labor believes or suspects is information completely *de hors* the record. In sum, the hearing has been so tainted that the only appropriate remedy is a remand for a new hearing before a new and impartial referee.

Because WIT established that Jilletante Creative was an independent contractor, I would reverse the grant of unemployment compensation benefits to Claimant. At the very least, a remand is necessary to cure the lack of a fair hearing.

_____
MARY HANNAH LEAVITT, President Judge

MHL-12